UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
KYLE ENDEMANN,

                       Plaintiff,

  -v-                                   5:18-CV-701

LIBERTY INSURANCE CORPORATION,

                       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                      OF COUNSEL:

HANCOCK ESTABROOK, LLP       ALAN J. PIERCE, ESQ.
Attorneys for Plaintiff
1800 AXA Tower I
100 Madison Street
Syracuse, New York 13202

GOLDBERG SEGALLA LLP-BUFFALO  JONATHAN SCHAPP, ESQ.
Attorneys for Defendant            ASHLYN M. CAPOTE, ESQ.
P.O. Box 657
Buffalo, New York 14201

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

    On January 18, 2018, plaintiff Kyle Endemann ("Endemann" or "plaintiff") filed a complaint against defendant Liberty Insurance Corporation ("Liberty" or "defendant"). Plaintiff brought four causes of action: (1) a request for declaratory relief; (2) breach of contract; (3) breach of the covenant of good

faith and fair dealing; and (4) a violation of New York General Business Law ("GBL") § 349.  At bottom, plaintiff claims that defendant, as plaintiff's insurer, failed to provide coverage and subrogation for water damage he sustained to his house on February 21, 2014.

On February 21, 2022, at the close of discovery, Liberty moved for summary judgment against Endemann's complaint under Federal Rule of Civil Procedure ("Rule") 56.  On April 11, 2022, plaintiff cross-moved to preclude the testimony of defendant's expert witness, Stephen Johnson.  The cross motions, having been fully briefed, will now be decided on the submissions and without oral argument.

## II. BACKGROUND[1]

On February 21, Endemann's house sustained water damage, either from a sump pump backup or from an overflow of his daylight drain.  Dkt. 146-2, Defendant's Statement of Material Facts ("DSMF"), ¶¶ 2, 7; Dkt. 146-6, p. 10.[2]  At the time, plaintiff's house was covered by a homeowners insurance policy issued by Liberty.  DSMF ¶ 1.

---

[1] The facts are taken from defendant's statement of material facts where admitted by plaintiff and read in the light most favorable to him, as is appropriate on a motion for summary judgment. Disputed facts are either flagged as disputed or else derived from the record itself.
[2] Pagination corresponds with CM/ECF.

In short order, Endemann hired Darin Checchia ("Checchia") as a public adjuster. DSMF ¶¶ 3. Checchia reported the claim to Liberty on February 25, 2014. *Id.* ¶ 5.

The next day, Liberty adjuster Kim Guignard ("Guignard") spoke to Checchia. DSMF ¶ 6. The two met to inspect Endemann's property on March 3, 2014. *Id.* ¶ 8. In the course of that inspection, Checchia did not show Guignard any damage to the outside of plaintiff's house. *Id.* ¶ 10. After reviewing the house's interior, Guignard handed plaintiff a check for $10,500 to cover the damage and sent him two letters dated the same day to explain the payment. *Id.* ¶¶ 9, 12.

The payment was calculated as $13,966.68 in damages to the dwelling, less a $1,000 deductible and less $2,466.68 to keep the payment at the $10,000 policy limit for damages caused by a sewer or sump pump backup. Dkt. 146-4, pp. 27, 40. In the letters, Liberty explicitly told Endemann to guard against further water damage. *Id.* at 40. The letters also asserted that defendant was not waiving any of the insurance policy's provisions or defenses. *See* DSMF ¶ 12.

Guignard then transferred the claim to the subrogation department the same day. DSMF ¶ 14. Liberty immediately reached out to Endemann to explain that it was mulling over a subrogated action. *Id.* ¶ 15. Periodically throughout the month of March, plaintiff and defendant would discuss

defendant's process of deciding whether or not they would bring a representative suit. *Id.* ¶ 16. But subrogation was the only matter they discussed; they never brought up any other dimension of plaintiff's claim. *Id.*

On April 17, 2014, Liberty let Endemann know that it would not pursue a subrogation claim and would close his claim file accordingly. DSMF ¶ 17. After that, defendant and plaintiff did not speak again until August of 2014. *Id.* ¶ 18. At some point in that month,[3] plaintiff called his agent to see if they would be willing to subrogate him against his neighbor, Edward Dubois ("Dubois"), who he believed was responsible for his loss. Dkt. 35 ("Compl."), ¶¶ 10, 16.[4] Plaintiff had apparently sued Dubois on his own and hoped that with defendant's resources at his back through subrogation, he could pressure Dubois's insurance company to settle. DSMF ¶ 19.

Through a series of letters dated September 12, September 18, and October 14, 2014, Liberty relented and told Endemann that it would pursue a subrogation action against Dubois. DSMF ¶¶ 22-23. But defendant warned plaintiff that they would only pursue its $10,500 payment to him as well as his $1,000 deductible. *Id.* ¶ 22. They were similarly clear that they would

---

[3] The parties dispute whether plaintiff spoke to defendant's Presidential Services Team before or after August 26, 2014. *Compare* DSMF ¶ 21 *with* Compl. ¶¶ 16-17.

[4] Plaintiff's own facts rely extensively on his verified amended complaint, the current operative pleading. Allegations in a verified complaint can be treated as an affidavit and used to defeat summary judgment to the extent that they are based on personal knowledge. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995), abrogated on other grounds by *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020).

not recover his out-of-pocket expenses. *See id.* Plaintiff was apparently simply interested in the fact that defendant was suing. *See id.* ¶ 24.

Between May of 2015 and August of 2016, Liberty sent Endemann four letters regarding the "Recovery of [His] Deductible" and explaining the progress of its subrogation claim against Dubois. Dkt. 48-1, pp. 258-61. The letters only mentioned recovering plaintiff's deductible from Dubois. *Id.* The letters also made no mention of any other activity regarding his claim.[5] *Id.* At no time between March of 2014 and April of 2017 did plaintiff complain about defendant's $10,500 payment.[6] DSMF ¶ 30.

In the meantime, Endemann's suit against Dubois continued apace. DSMF ¶ 29. In May of 2018, that lawsuit culminated in a jury trial. *Id.* The jury found that Dubois had been negligent in managing his sump pump. Dkt. 146-12, p. 1. Nevertheless, it found that Dubois's negligence did not

---

[5] Plaintiff objects that the letters also discussed his first-party claim against Dubois. To the extent that that is true, he has not provided any support for that point, and the documents themselves make no mention of his own claim. Dkt. 48-1, pp. 258-61.

[6] Plaintiff denies this fact, but only points to his memorandum of law in support of the denial. Under Local Rule of the Northern District of New York 56.1(b), a responsive statement of material facts must "set forth a specific citation to the record where the factual issue arises." Failure to do so permits a court to deem any unsupported facts to be admitted. *Id.* Similarly, if a plaintiff wishes to raise additional disputed facts not mentioned by the defendant's statement of material facts, the proper mechanism to do so is by filing a "short and concise Statement of Additional Material Facts in Dispute." *Id.* Plaintiff instead sprinkled additional new facts throughout his memorandum of law. Even taking the particularly solicitous approach of considering these improperly presented facts, nowhere does plaintiff point to any evidence contradicting defendant's point. This fact is deemed admitted. *See, e.g., LaFever v. Clarke*, 525 F. Supp. 3d 305, 324-25 (N.D.N.Y. 2021) (deeming facts admitted where plaintiff fails to properly follow local rules to put fact in dispute).

proximately cause plaintiff's injury. *Id.* Judgment was therefore entered in Dubois's favor. DSMF ¶ 29.

In the intervening years, Endemann's damages from the water loss had apparently ballooned to $512,143.41. DSMF ¶ 34. As a result, plaintiff grew dissatisfied with the initial adjustment, and on April 26, 2017, his attorney reached out to Liberty to discuss "widen[ing] the original claim." *Id.* ¶ 31. Defendant issued denial letters on June 12 and June 19, 2017, reiterating that plaintiff's damage was covered by a sump pump exclusion. Dkt. 146-4, pp. 287, 296. As a result, defendant refused to consider paying plaintiff any more for his loss. *See id.*

Evidently dissatisfied with the outcome of his claim, Endemann filed two further lawsuits to try to recover the damage to his house. First, he filed a lawsuit against the law firm that handled his claim against Dubois on June 17, 2020. Dkt. 146-13. At its core, that lawsuit alleges malpractice against his attorneys for failing to sue Liberty. *Id.* ¶¶ 27-31. According to plaintiff, his attorneys' reason for declining to sue defendant was because plaintiff was already suing Dubois's insurance company. *Id.* ¶ 27.

Second, Endemann filed this case in New York State Supreme Court, Madison County on January 18, 2018. Dkt. 2. On June 14, 2018, Liberty removed plaintiff's claim against it to this district. Dkt. 1. On February 21, 2022, defendant moved for summary judgment against plaintiff's complaint,

6

principally arguing that his claims were untimely. Dkt. 146. On April 13, 2022, plaintiff cross-moved to preclude the testimony of defendant's expert witness Stephen Johnson. Dkt. 150. This decision now follows.

## III. **LEGAL STANDARD**

Summary judgment under Rule 56 is warranted if the parties' submissions show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing FED. R. CIV. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute of a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant bears the burden of pointing the court to the materials that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Additionally, a court considering a summary judgment motion "must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party." *Ward v. Stewart*, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017) (citing *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)). Even so, a non-movant's conclusory allegations without support from record evidence are insufficient: the non-movant must "put up

7

or shut up." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). At bottom, summary judgment tasks the Court with assessing the assembled evidence and determining whether a reasonable factfinder could find in the nonmovant's favor. *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).

## IV. DISCUSSION

Before even arguing the merits of Endemann's claims, Liberty takes issue with plaintiff's apparent delay in bringing them. To that end, the statute of limitations for a claim under GBL § 349 is three years. *Gaidon v. Guardian Life Ins. Co.*, 750 N.E.2d 1078, 1083 (N.Y. 2001). By contrast, the statute of limitations for a contractual claim—be it an express breach or an implicit violation—under New York law is six years. N.Y. C.P.L.R. § 213(2).

However, the longer six-year period provided for in a breach of contract claim can be reduced if the agreement itself specifies a shorter—but still reasonable—timeframe. *CingleVue Int'l Pty, Ltd. v. eXo Platform NA, LLC*, 2014 WL 3400856, at *3 (N.D.N.Y. July 10, 2014) (citing CPLR § 201). Unless the plaintiff can prove that the shorter limitations period was the result of "fraud, duress, or other wrongdoing," though, an agreed-upon timeframe to file suit of one year or longer will generally be upheld. *CingleVue*, 2014 WL 3400856, at *3.

Endemann's contract with Liberty is subject to a reduced limitations period of two years. Dkt. 40-12, p. 35 ("No action can be brought against [defendant] unless . . . the action is started within two years after the inception of the loss"). And since that reduction allows plaintiff more than one year to file suit, it is reasonable in the absence of some showing of wrongdoing. *CingleVue*, 2014 WL 3400856, at *3. Plaintiff does not dispute that both his GBL and contract-based claims are untimely on their face, and nowhere does he claim that defendant manipulated him into agreeing to the reduced statute of limitations.

Instead, he relies on the doctrine of equitable estoppel to save his complaint. Under New York law, "equitable estoppel will preclude a defendant from using the statute of limitations as a defense where it is the defendant's affirmative wrongdoing which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding." *Putter v. N. Shore Univ. Hosp.*, 858 N.E.2d 1140, 1142 (N.Y. 2006) (cleaned up). In other words, "[e]quitable estoppel is appropriate where the plaintiff is prevented from filing an action within the applicable statute of limitations due to his or her reasonable reliance on deception, fraud[,] or misrepresentations by the defendant." *Id.*

But keep in mind that equitable estoppel is an "extraordinary remedy" which should only be "invoked sparingly and only under exceptional

9

circumstances." *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014). Thus, to salvage his late claims, a plaintiff must "make sufficient factual allegations that each of the requirements of equitable estoppel is satisfied, or at least raise an issue of fact as to whether equitable estoppel applies." *Id.* at 443.

Ultimately, establishing equitable estoppel requires a plaintiff to prove: (1) a concealment or misrepresentation; (2) upon which defendant intended or expected plaintiff to rely; (3) defendant's actual or constructive notice of the truth; and (4) reliance upon the misrepresentations causing the plaintiff to change its position to its "substantial detriment." *Gen. Elec. Cap. Corp. v. Armadora, S.A.*, 37 F.3d 41, 45 (2d Cir. 1994) (citations omitted). The deception the plaintiff claims must be distinct from the facts of his underlying claim. *Ross v. Louise Wise Servs., Inc.*, 868 N.E.2d 189, 198 (N.Y. 2007).

Endemann claims that Liberty should be estopped from relying on the statute of limitations because it failed to inform him that it would not pay

him any more than the initial $10,500.⁷ Plaintiff's arguments fail for two reasons.

First, Endemann has failed to point to any concealment or misrepresentation on Liberty's part that would justify estopping it from relying on the statute of limitations. *Armadora*, 37 F.3d at 45. None of the evidence plaintiff has ginned up suggests at any point that defendant was still considering paying him more than the $10,500 it gave him on March 3, 2014.

On the contrary, it is undisputed that Liberty told Endemann on April 17, 2014 that they would not pursue subrogation, and as a result would close his claim file. DSMF ¶ 17. In other words, plaintiff was put on notice that subrogation was the only alternative to his claim being closed. Once defendant elected to pursue subrogation, it is just as undisputed that defendant was repeatedly clear that the *only* funds defendant was attempting to recover from Dubois were the $10,500 it paid to plaintiff as well as his deductible. DSMF ¶ 22. No part of that set of facts smacks of deception.

---

⁷ Plaintiff also claims that prior decisions in this case at the motion to dismiss stage foreclose consideration of defendant's equitable estoppel arguments now. Plaintiff ignores that courts routinely reconsider issues raised at the motion to dismiss stage once a record has been fully developed. *See, e.g.*, *Clalit Health Servs. v. Israel Humanitarian Found.*, 385 F. Supp. 2d 392, 398 n.8 (S.D.N.Y. 2005) (collecting cases for proposition that determinations made on pre-discovery motions do not qualify as law of the case on summary judgment). In any case, the prior decisions plaintiff alludes to explicitly left the door open for defendant to renew its statute of limitations defense on summary judgment. Dkt. 54, p. 7. ("Defendant can renew its suit-limitations defense to this cause of action on summary judgment or at trial.")

11

Endemann's efforts to establish the opposite point rely on a series of strained readings of Liberty's correspondence with him. For example, he tries to make much of the fact that his claim was never rejected outright until June of 2017. But of course his claim was not rejected. Defendant paid plaintiff the full amount authorized under the sump pump exclusion. Dkt. 146-4, pp. 27, 40. There is nothing fraudulent about defendant not denying a claim that they paid. *See Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1184 (N.Y. 2012) (citing *Ross*, 868 N.E.2d at 198 for proposition that there must be a "later fraudulent misrepresentation" for the purpose of concealing earlier tort for equitable estoppel to apply).

Similarly, Endemann's reliance on informal emails to apparently demonstrate that defendant classified claims under investigation differently from claims subject to subrogation—and by extension that plaintiff had reason to believe defendant was still assessing his insurance claim—fails as well. Dkt. 146-4, pp. 115-21 (emails between plaintiff's attorney and defendant discussing redirecting subrogation file to coverage adjuster). Nothing in those emails suggests that Liberty was still considering paying plaintiff more for his loss. *See generally id.*

On the contrary, Liberty's employee told Endemann's attorney that the file was never closed because defendant uses "the same claim number across the board for claims and subrogation." Dkt. 146-4, p. 116. There is no evidence

12

at all that defendant ever suggested to plaintiff that he would recover more from them than the amount allowed under the sump pump exclusion.[8] Equitable estoppel is therefore inappropriate.

But even if Liberty *had* misled Endemann at any point about its position on his insurance claim, his equitable estoppel arguments fail for the additional reason that no reasonable jury could conclude that plaintiff relied on any deception to his detriment. The undisputed evidence establishes that plaintiff was fully aware throughout the subrogation that defendant had no intention of recovering any more from Dubois than the amount it had paid him. DSMF ¶ 22. And plaintiff's own complaint against his attorneys claims that they told him that they did not pursue claims against defendant not because they were waiting until his claim could become finalized, but because they were suing Dubois instead. Dkt. 146-13, ¶ 27.

In other words, Endemann did not sit on his rights generally, but instead aggressively pursued Dubois to recover for the damage to his house. Of course, he could not have recovered twice for the same harm, so if he had prevailed against Dubois, his claims against Liberty would have been moot in

---

[8] To that point, a note in plaintiff's claim file from June 9, 2017, recommended that defendant maintain its prior determination that plaintiff's damage was capped at the $10,000 sump pump exclusion. Dkt. 146-4, p. 7. Plaintiff objects that defendant had never taken this position in writing before. That is plainly incorrect. Defendant told plaintiff on March 3, 2014 that he was being paid based on the Back Up of Sewer and Sump Pump Overflow Coverage Endorsement and that that endorsement was capped at $10,000. *Id.* at 40. Plaintiff's attempt to fashion subterfuge out of defendant's straightforward position on his policy fails.

13

any case.  *Cf. Fasso v. Doerr*, 903 N.E.2d 1167, 1170 (N.Y. 2009) (explaining that subrogation allows insurer to recover from defendant because party who causes injury should bear loss, but injured party should not be able to recover both from insurer and wrongdoer).

In other words, Endemann made the strategic decision that instead of fighting Liberty on the scope of the applicable coverage, he would go straight to the source and try to recover from Dubois.  That his chosen strategy backfired and left him empty-handed in no way entitles him to equitable estoppel.  Instead, the record decisively shows that plaintiff never demanded that defendant cover any more of his damages than the $10,500 they initially provided him, and even acquiesced to a subrogated action to recover that lesser amount while he went after Dubois.  Plaintiff's claims are therefore all untimely,[9] and his complaint must be dismissed.  *See, e.g.*, *Clement v. Farmington Cas. Co.*, 2015 WL 6971565, at *5 (S.D.N.Y. Nov. 10, 2015) (finding no basis for equitable estoppel when insured elected to investigate claims against and sue allegedly at fault homeowner but never investigated or sued insurance company during limitations period).

---

[9] Plaintiff's request for a declaratory judgment must similarly be dismissed, because a declaratory judgment is not a freestanding remedy and cannot survive without an underlying claim to support it.  *Med-Plus, Inc. v. Am. Casualty Co.*, 2017 WL 3393824, at *2 n.1 (E.D.N.Y. Aug. 4, 2017) ("Declaratory judgment is a remedy, . . . not a freestanding cause of action.").

## V. <u>CONCLUSION</u>

Ultimately, Endemann's complaint comes far too late, and his excuses for that delay are far too meager. He wasted no time in pursing claims against Dubois, and as a consequence his attempts to pass the blame for his sloth to Liberty ring hollow. It may be that he received bad advice from prior attorneys. And it may be that defendant could have been slightly clearer in its communications with him. In the former case, perhaps plaintiff's malpractice claim will finally win him relief. In the latter, nothing in this record comes close to the necessary level of a misrepresentation that would justify equitable estoppel. Plaintiff's claims must be dismissed.[10]

Therefore, it is

ORDERED that

1. Defendant Liberty Insurance Corporation's Motion for Summary Judgment is GRANTED;

2. Plaintiff Kyle Endemann's Cross-Motion to preclude the expert testimony of Stephen Johnson is DENIED as moot; and

3. The Clerk of the Court is directed to enter judgment accordingly and close the case file.

IT IS SO ORDERED.

---

[10] Defendant's expert Stephen Johnson's opinion was never considered in reaching this conclusion. Accordingly, plaintiff's motion to preclude his testimony must be denied as moot.

15

Dated: May 5, 2022
       Utica, New York.

David N. Hurd
U.S. District Judge